**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>AARON M. FREY, in his official capacity as ATTORNEY GENERAL OF MAINE,<br><br>*Defendant*. | Case No. 1:25-CV-407 (JCN) |

**NOVARTIS PHARMACEUTICALS CORPORATION'S
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Matthew Warner
Alexandra Harriman
PRETIFLAHERTY
45 Memorial Circle,
Augusta, ME 04330
Telephone: (207) 623-5300
mwarner@preti.com

Susan M. Cook*
Jessica L. Ellsworth*
Alexander V. Sverdlov*
Marlan Golden*
Jacob T. Young*
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
susan.cook@hoganlovells.com

*Attorneys for Plaintiff Novartis
Pharmaceuticals Corporation*

*Admitted pro hac vice

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT .......................................................................................................................................1

I.     NOVARTIS HAS STANDING. ..............................................................................................1

II.    CHAPTER 103 IS PREEMPTED BY FEDERAL LAW. .........................................................2

III.   CHAPTER 103 VIOLATES THE DORMANT COMMERCE CLAUSE. ...........................6

IV.   THE NON-MERITS FACTORS FAVOR AN INJUNCTION. ............................................7

CONCLUSION....................................................................................................................................7

## TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Arizona v. United States*,
   567 U.S. 387 (2012)..................................................................................................4

*Astra USA, Inc. v. Santa Clara County*,
   563 U.S. 110 (2011)...............................................................................................3, 4

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001)..................................................................................................3

*Capron v. Office of the Att'y Gen. of Mass.*,
   944 F.3d 9 (1st Cir. 2019).........................................................................................3

*CoxCom, Inc. v. Chaffee*,
   536 F.3d 101 (1st Cir. 2008).....................................................................................2

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   596 U.S. 212 (2022)..................................................................................................5

*Family Winemakers of Cal. v. Jenkins*,
   592 F.3d 1 (1st Cir. 2010).........................................................................................7

*French v. Pan Am Express*,
   869 F.2d 1 (1st Cir. 1989)......................................................................................4–5

*Gade v. National Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992)....................................................................................................4

*Goya de P.R. Inc. v. Santiago*,
   59 F. Supp. 2d 274 (D.P.R. 1999).............................................................................4

*Hyde Park Partners, L.P. v. Connolly*,
   839 F.2d 837 (1st Cir. 1988).................................................................................6, 7

*Maine Forest Prods. Council v. Cormier*,
   51 F.4th 1 (1st Cir. 2022).........................................................................................5
   586 F. Supp. 3d 22 (D. Me. 2022) ...........................................................................7

*Novartis Pharms. Corp. v. Johnson*,
   102 F.4th 452 (D.C. Cir. 2024).....................................................................2, 4, 5, 6

*Ouellette v. Mills*,
   91 F. Supp. 3d 1 (D. Me. 2015)................................................................................3

*Pharmaceutical Rsch. & Mfrs. of Am. v. Concannon*,
 249 F.3d 66 (1st Cir. 2001) ................................................................................... 2

*Rodriguez v. United States*,
 480 U.S. 522 (1987) .............................................................................................. 5

*Sanofi Aventis U.S. LLC v. HHS*,
 58 F.4th 696 (3d Cir. 2023) ............................................................................... 2, 4

*Shaw v. Delta Air Lines, Inc.*,
 463 U.S. 85 (1983) ................................................................................................ 2

*Tirrell v. Edelblut*,
 747 F. Supp. 3d 310 (D.N.H. 2024) ....................................................................... 7

*United States v. Locke*,
 529 U.S. 89 (2000) ................................................................................................ 3

*West Lynn Creamery, Inc. v. Healy*,
 512 U.S. 186 (1994) .............................................................................................. 7

*Wood v. General Motors Corp.*,
 865 F.2d 395 (1st Cir. 1988) ................................................................................. 6

**STATUTES:**

24-A M.R.S. § 7752(5) ................................................................................................ 4

24-A M.R.S. § 7752(6) ............................................................................................ 3, 4

24-A M.R.S. § 7752(7) ................................................................................................ 4

24-A M.R.S. § 7753(1) ................................................................................................ 2

**REGULATIONS:**

42 C.F.R. § 10.21(a)(1) ................................................................................................ 6

iii

The State's brief wrongly treats Chapter 103 like generally applicable state legislation. But Chapter 103 does not cover all Maine drug dispenses, pharmacies, or healthcare providers. This new state law attaches parasitically to federal law, expropriating 340B's discounted pricing rules and applying them to a new set of transactions not mandated by federal law. Worse, Chapter 103 commandeers a special type of federal law: Congress created the 340B Program under the Spending Clause, and made 340B obligations the price of participating in Medicaid and Medicare Part B. Every facet of 340B's operation embodies Congress's balance of benefits and burdens among participants in these three federal programs. In this context, silence speaks: What the federal 340B statute does *not* require is just as important as what it *does* require. Both equally reflect Congress's tradeoffs in crafting a single, integrated set of requirements under centralized federal oversight.

Federal 340B law allows Novartis to limit covered entities to a single contract pharmacy. Yet Chapter 103 purports to graft a contrary, state-specific burden directly onto an exclusively federal program, mandating that manufacturers recognize an unlimited number of contract pharmacies in the State of Maine, thus vastly expanding the number of transactions on which Novartis must provide a massive discount. Chapter 103 is preempted because it redraws 340B's boundaries according to the State's policy preferences. Chapter 103 also violates the dormant Commerce Clause because it accomplishes this through discriminatory and unduly burdensome requirements that govern wholly extraterritorial conduct between manufacturers and wholesalers. For both reasons, Chapter 103's enforcement should be preliminarily enjoined.

## ARGUMENT

### I. NOVARTIS HAS STANDING.

The Government's challenge to Novartis's standing (at 11–14) relies on a misunderstanding of Novartis's injury. Chapter 103 harms Novartis not *only* by increasing unlawful diversion, but also by forcing Novartis to offer far more 340B discounts than federal law requires—regardless

1

of the diversion risks. By forcing manufacturers to give 340B discounts on transactions involving an unlimited number of contract pharmacies, the state law vastly increases the total volume of 340B discounts paid by manufacturers overall. Later in its brief (at 22–23), the Government implicitly acknowledges this fact by announcing that Chapter 103 would "protect[ ]" 340B-priced sales that contract pharmacy policies found to be permitted under federal law would otherwise "reduce." This harms Novartis to the tune of "millions of dollars lost annually," McCrudden Decl. ¶ 17—a straightforward "loss of remuneration" that easily establishes standing. *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 108 (1st Cir. 2008).

Chapter 103 also seeks to dictate Novartis's operations. Federal law purposely "preserves" Novartis's discretion to limit contract pharmacy usage. *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024); *see also Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703–706 (3d Cir. 2023). Chapter 103 would outlaw the very same limits, subjecting Novartis to draconian sanctions if it does not change a federally lawful policy that is *already in place*. ECF No. 1-1; 24-A M.R.S. § 7753(1). A plaintiff directly "subject to" regulation has standing to challenge it. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (finding jurisdiction over "injunctions against enforcement of state laws [plaintiffs] claim are pre-empted" (emphasis omitted)).

## II.  CHAPTER 103 IS PREEMPTED BY FEDERAL LAW.

The State's misconception of Chapter 103's harms pervades its merits analysis, too. It suggests (at 14–15) that Novartis is merely speculating about Chapter 103's secondary effects on covered entities' compliance with federal law. But this is not a case like *Pharmaceutical Research & Manufacturers of America v. Concannon*, 249 F.3d 66, 75–79 (1st Cir. 2001), where the Medicaid statute "explicitly permitted" the type of state law at issue, leading the plaintiff to challenge only an *application* of the state's power based on its potential harms. The federal 340B statute contains no similar invitation to state involvement. The opposite is true: Congress intentionally

2

designed the program to be administered "on a uniform, nationwide basis" by a single federal agency. *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 119–120 (2011). Chapter 103's very existence frustrates that design, and its corrosive effect on Congress's scheme—forbidding conduct federal law deliberately authorizes—is not speculative. It is Chapter 103's core purpose.

*No Presumption.* The Government fails (at 15, 18–19, 22) to justify any presumption that Chapter 103 is not preempted. First, Chapter 103 does not regulate the "practice of pharmacy" or drug delivery in general. *Contra* State Br. at 16. It regulates only the circumstances under which manufacturers must provide 340B-priced drugs. *See* 24-A M.R.S. § 7752(6) (defining a "340B drug" by incorporating federal pricing law). This is exactly the situation the court distinguished in *Capron v. Office of the Attorney General of Massachusetts*: the law is not "generally applicable," but instead "predicated on the existence of the federal . . . program regulations." 944 F.3d 9, 23 (1st Cir. 2019); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (no presumption protects state attempts to govern "inherently federal" relationships that "originate[ ] from, [are] governed by, and terminate[ ] according to federal law"). The 340B Program is also (to say the least) an area with a "history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). Federal law created the program from scratch, and there would be no 340B-priced drugs, no covered entities, no contract pharmacies—and no Chapter 103—without it. In contrast, no state had tried to regulate 340B Program requirements until recently.

Nor does Chapter 103 regulate "[h]ealth and safety." *Contra* State Br. at 16. Unlike in *Ouellette v. Mills*, this state law would not bring any new drugs into Maine or change the prices patients pay. 91 F. Supp. 3d 1, 4–5 (D. Me. 2015) (analyzing a state's attempt to import drugs from abroad). Chapter 103 would change only the amount of revenue *covered entities* and their for-profit partners extract from the 340B Program. Chapter 103 changes *nothing* about drug

3

delivery; these drugs are already being provided to Maine patients at the same pharmacies, and at the same prices patients would pay under the new law. Verified Compl. ¶¶ 37–39, 43, 52–53, 71, 91, 127. This purely economic effect on corporate interests cannot be recast as an exercise of Maine's police power. *Cf. Goya de P.R. Inc. v. Santiago*, 59 F. Supp. 2d 274, 278–280 (D.P.R. 1999) (finding a food-labeling law preempted despite Puerto Rico's unsubstantiated claims about "health and safety"). No presumption shields an attempted wealth transfer among companies.

*Field Preemption.* The State seemingly agrees (at 18) that Congress reserved at least some 340B issues for federal governance—as it must, given *Astra*'s holding that Congress intended "centralized enforcement in the government." 563 U.S. at 119 (quotation omitted). The State thus tries to carve out the question whether manufacturers must provide 340B discounts on unlimited contract pharmacy arrangements as somehow "distinct" from what federal law covers. State Br. at 18.[1] But Congress's decision not to require such discounts does not mean it is indifferent about them; that decision was intentional. *Novartis*, 102 F.4th at 460 (federal law "preserves—rather than abrogates—the ability of sellers to impose at least some delivery conditions"); *Sanofi*, 58 F.4th at 705–706 (Congress considered and rejected a requirement similar to Chapter 103). And the heft of manufacturers' 340B burdens is essential to Congress's design because every dollar lost under the program is a dollar sacrificed to access Medicaid and Medicare Part B. PI Mot. at 3. This "harmonious[ ]" scheme cannot be divided, *Astra*, 563 U.S. at 120, and that is a classic basis for finding field preemption. *E.g.*, *Arizona v. United States*, 567 U.S. 387, 401 (2012).

The State also points out (at 19) that *Astra* was not a preemption case. But it ignores *French v. Pan Am Express*, which explains that field preemption is inferred from the "goal[ ] of a

---

[1] Paradoxically, the State also faults Novartis (at 16) for defining the field too *narrowly*. But Novartis did not confine Chapter 103's effects to the 340B Program; the law itself does this. 24-A M.R.S. §§ 7752(5)–(7). Chapter 103 purports to regulate in only one way: forbidding manufacturers to attach certain conditions to offers to sell 340B-priced drugs—in an overt attempt to alter federal rules on exactly this subject. "[T]he state law's actual effect" is a critical determinant of the field. *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 105 (1992) (quotation omitted).

4

federal statute" to create "a single uniform system of regulation."  869 F.2d 1, 5 (1st Cir. 1989).  *Astra* could not have established that congressional goal more clearly even if it *had* been a preemption case.  563 U.S. at 119–120.  The State's refusal to put two and two together is no answer.

  ***Conflict Preemption.***  The Government celebrates, rather than refutes, Chapter 103's core conflict with federal law.  By acknowledging (at 22–23) that Chapter 103 would "protect[ ]" 340B-priced sales that Novartis's contract pharmacy policy would otherwise "reduce," the State admits that its law would rebalance 340B requirements.  But there is no dispute that federal law "confers a right" on Novartis to maintain its current policy.  *Maine Forest Prods. Council v. Cormier*, 51 F.4th 1, 8 (1st Cir. 2022); *see also Novartis*, 102 F.4th at 460.  By curtailing that right, Maine has unlawfully asserted a "veto power over the federal program."  *Maine Forest Prods.*, 51 F.4th at 11.

  The State gets matters precisely backwards by asserting (at 20) that *Novartis* is trying to "fill the silence" in the federal 340B statute.  Even the State recognizes (at 22) that the 340B Program is unique because its obligations are what Novartis "bargained for by participating in Medicare Part B [and Medicaid]."  Put differently, this Spending Clause program "operates based on consent" to terms clearly defined in advance.  *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219 (2022).  In this context, statutory silence speaks volumes because it represents a burden not imposed—and a bargain not struck.  It is Chapter 103 that purports to speak over that silence, but it is not filling a gap; it is undoing Congress's careful balance of benefits and burdens.  That Congress did not expressly oust state interference on this specific subject is immaterial because—unlike in Medicaid—it did not provide for *any* state involvement in the 340B Program.

  The State's purported goals are irrelevant.  *Contra* State Br. at 23.  No legislation pursues its purposes at all costs.  *Rodriguez v. United States*, 480 U.S. 522, 525–526 (1987) (per curiam).  By supercharging one policy goal at the expense of Congress's means-related objectives, Maine

5

has made a critical error: assuming statutory tradeoffs were "randomly or uncarefully chosen by Congress." *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 852 (1st Cir. 1988).

The Government's simplistic attempt (at 23–24) to wall off 340B "pricing" from 340B "delivery" does not solve Chapter 103's shadow-enforcement problem. HRSA's ADR process draws no such distinction; it funnels in all "claims that a manufacturer has limited the covered entity's ability to purchase . . . drugs at or below the 340B ceiling price." 42 C.F.R. § 10.21(a)(1). HRSA has recognized Novartis's contract pharmacy policy as lawful in an ADR proceeding. PI Mot. at 21 n.9. By outlawing the same policy, Chapter 103 would not only create overlapping enforcement—it would guarantee opposing outcomes, "destroy[ing] the national uniformity of the federal standard." *Wood v. General Motors Corp.*, 865 F.2d 395, 412 (1st Cir. 1988).

The State all but ignores Chapter 103's interference with claims-data collection. State Br. at 24–25. It is beside the point that Novartis may do everything *except* condition 340B pricing on receipt of claims data (which its current policy does). *Id.* at 24; *see also* ECF No. 1-1. Federal law, again, allows Novartis to do just that. *Novartis*, 102 F.4th at 463.

### III. CHAPTER 103 VIOLATES THE DORMANT COMMERCE CLAUSE.

The Government also fails to rebut all three of Chapter 103's Commerce Clause defects.

***Extraterritoriality.*** The Government's misunderstanding (at 26) of Novartis's claim unintentionally highlights the problem: It is not that "middlemen could be obligated to comply with Chapter 103"; it is that Chapter 103 does *not* regulate any in-state middlemen—only Novartis, whose relevant conduct occurs wholly out of state. PI Mot. at 27. Two federal appeals courts have recognized this exact failing, including after *Pork Producers*, *id.* at 27–28, yet Maine says nothing about these cases, State Br. at 25–29. At most, the State asserts without any explanation that Chapter 103 "does not insist that manufacturers sell their drugs to a wholesaler for a certain price." State Br. at 27 (quotation omitted). But that is exactly what it does. Verified Compl. ¶¶ 116–118.

6

***Discrimination.***  The State brushes off an express declaration of unlawful animus by Chapter 103's sponsor (PI Mot. at 29), by pointing to irrelevant cases (at 27) about using legislative history to *interpret* a statute.  But a sponsor's statements about why a statute was enacted are highly relevant to detecting discrimination.  *E.g.*, *Family Winemakers of Cal. v. Jenkins*, 592 F.3d 1, 7 (1st Cir. 2010) (analyzing "floor debates").  And contrary to any suggestion that Novartis and covered entities are differently situated, they occupy different places in the same distribution chain.  *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 202–203 (1994).

***Excessive Burden.***  The Government's *Pike* analysis (at 28) rests on the faulty premise that Chapter 103 would "promote access" to drugs.  But again, Chapter 103 would not change the places where patients get drugs or the prices they pay for them.  Verified Compl. ¶¶ 37–39, 43, 52–53, 71, 91, 127.  To the extent increasing covered entities' revenue is a public benefit, it could be done without burdening interstate commerce.  *See Hyde Park Partners*, 839 F.2d at 847–848.

## IV.   THE NON-MERITS FACTORS FAVOR AN INJUNCTION.

Finally, the State's irreparable harm analysis (at 29–30) overlooks the unrecoverable cost of *additional* discounts that Chapter 103 would force Novartis to provide.  Verified Compl. ¶ 135; McCrudden Decl. ¶¶ 17–19.  On the remaining factors, the State seems to agree (at 31) that Chapter 103 would not get patients cheaper drugs, but says some covered entities might choose to use their extra revenue "to fund a broad compliment of services to patients."  The Court need not make a freeform policy judgment about the likelihood of this hypothetical.  The overriding public interest here is in upholding the Constitution—including its deference to the policy judgment Congress already made about the 340B Program's scope.  *See Maine Forest Prods. Council v. Cormier*, 586 F. Supp. 3d 22, 64 (D. Me. 2022); *Tirrell v. Edelblut*, 747 F. Supp. 3d 310, 319 (D.N.H. 2024).

## CONCLUSION

For all those reasons, the Court should grant Novartis's preliminary-injunction motion.

Dated: September 15, 2025

Respectfully submitted,

*/s/ Matthew Warner*
Matthew Warner
Alexandra Harriman
PRETIFLAHERTY
45 Memorial Circle,
Augusta, ME 04330
Telephone: (207) 623-5300
mwarner@preti.com

Susan M. Cook*
Jessica L. Ellsworth*
Alexander V. Sverdlov*
Marlan Golden*
Jacob T. Young*
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
susan.cook@hoganlovells.com

*Attorneys for Plaintiff Novartis Pharmaceuticals Corporation*

*Admitted pro hac vice